IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| EL PASO CHILDREN'S HOSPITAL | § | |
| CORPORATION, | § | CASE NO. 15-30784 |
| DEBTOR. | § | CHAPTER 11 |
| | § | |
| EIN: 26-3075429 | § | |
| | § | |
| 4845 ALAMEDA AVENUE | § | |
| EL PASO, TEXAS 79905 | § | |

**DEBTOR'S EMERGENCY MOTION PURSUANT TO 11 U.S.C. § 363 FOR (I) AUTHORITY TO USE CASH COLLATERAL IN THE ORDINARY COURSE; (II) PROVIDE ADEQUATE PROTECTION, AND (III) SCHEDULING FINAL HEARING**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COMES NOW El Paso Children's Hospital Corporation ("EPCH" and/or "Debtor"), the Debtor-In-Possession in this case, and file its Emergency Motion for Pursuant to 11 U.S.C. § 363 for (i) Authority to Use Cash Collateral in the Ordinary Course; (ii) Provide Adequate Protection, and (iii) Schedule Final Hearing ("Motion"). In support thereof, the Debtor would respectfully show as follows:

**I. SUMMARY**

1. In this Motion, the Debtor seeks immediate authority to use cash collateral, but under a set of atypical facts. El Paso County Hospital District d/b/a University Medical Center ("UMC") asserts a lien over all of the assets of the Debtor via a UCC-1 filing[1] it made less than a year ago. UMC is not a lender in the traditional sense, and the relationship between UMC and the Debtor has never been that of a typical lender/debtor relationship. Rather, and as set forth more fully in the Herbers Declaration,[2] and the Complaint and Request for Injunctive Relief

---

[1] As defined herein, "UMC Lien."
[2] *See* Declaration of Mark Herbers, Chief Executive Officer of El Paso Children's Hospital Corporation, in Support

1

against UMC,³ a series of agreements that provide for UMC's provision of services to the Debtor (all of which are crucial to its operations), have fostered the development of a codependent and abusive relationship between UMC and the Debtor that has financially strangled the Debtor.

2. Against this factual backdrop, and because of the UMC Lien, the Debtor seeks immediate authority pursuant to §§ 105, 361, 362, and 363 of Chapter 11 of title 11 of the United States Code ("Bankruptcy Code") and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and Local Bankruptcy Rule 4001, for entry of interim and final orders in substantially the form attached hereto as Exhibit A (i) authorizing the Debtor's use of cash collateral as that term is defined in § 363 of the Bankruptcy Code ("Cash Collateral"); (ii) providing adequate protection under §§ 361 and 363 of the Bankruptcy Code; and (iii) scheduling a final hearing pursuant to Bankruptcy Rule 4001.

## II. EMERGENCY CONSIDERATION

3. The Debtor has requested emergency consideration of this Motion. The relief requested is necessary for the Debtor's continued operation and continued ability to provide care to its pediatric patients. Without immediate funding, the Debtor will not be able to continue its operations or pay expenses incurred in the ordinary course of its business, which directly threatens its ability to provide patient care. As such, the Debtor believes that emergency consideration of this Motion is necessary.

## III. JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (M). Venue of the Debtor's Chapter 11 case and this Motion in this district is proper pursuant to 27 U.S.C. §§ 1408

---

of First Day Motions (as defined herein, "Herbers Declaration").
³ The Debtor will pursue its Complaint and Request for Injunctive Relief against UMC initiating an adversary proceeding.

and 1409. The Court has the authority to enter the requested relief under Bankruptcy Code § 105.

## IV. FACTUAL BACKGROUND

5. On May 19, 2015 ("Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq*. (as amended the "Bankruptcy Code"). The Debtor is authorized to operate its business as debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner, and no committee has been appointed in this case.

6. A description of the background of the Debtor and the events leading up to the filing of the voluntary petition by the Debtor, is provided in the Declaration of Mark Herbers in Support of First Day Motions ("Herbers Declaration"), which is incorporated herein by reference.

7. When the Debtor opened its doors on February 14, 2012, it opened the door for the children of El Paso and the surrounding communities to have unprecedented access to high-caliber pediatric care in their own backyard. The Plaintiff's opening accomplished the largest expansion of pediatric medical care in recent West Texas history, thus filling a void in pediatric care in El Paso that had historically caused infants and children in need of specialized pediatric care to travel to Albuquerque or San Antonio or Dallas or even across the state to Houston to receive treatment from pediatric specialists and sub-specialists. In fact, until the Plaintiff opened its doors, El Paso was the largest city in the United States without a separately licensed children's hospital. The Debtor is the only separately licensed, non-taxing, independent, not-for-profit children's hospital in the El Paso region and the only dedicated pediatric hospital within a 250-mile radius of El Paso. Indeed, in addition to providing desperately needed pediatric care to the region's children, the Debtor's opening also attracted high-caliber specialists and

3

subspecialists to El Paso, along with experienced registered nurses and highly trained clinical staff that provide excellent care to the community's children on a daily basis. EPCH received the Joint Commission's highest praise for quality of care.

8. On February 10, 2012, on the eve of its opening, the Debtor and University Medical Center of El Paso ("UMC") entered into a multitude of agreements that document and govern the relationship between the two parties, including the provision of services by UMC to the Debtor (the "Agreements"). The Agreements are consistently ambiguous, lopsided, and provide UMC with rights and compensation that exceed UMC's costs and market rates by several fold. As set forth in the Herbers Declaration, the services that the Debtor receives from UMC pursuant to the Agreements are crucial to its ability to provide medical care to its patients.

9. Not surprisingly, the Debtor was unable to keep up with the exorbitant charges foisted on it by the Agreements. On or about April 11, 2013, the Debtor entered into a Pledge and Security Agreement ("Security Agreement"), purportedly to secure the Debtor's obligations due to UMC arising from an agreement on outstanding amounts owed to UMC relating to the Agreements.

10. Since at least mid-April of 2014, the Debtor has had material operating losses and has been suffering from a lack of liquidity. UMC has had knowledge of the Debtor's material operating losses and its lack of liquidity since at least 2013. Further, UMC has had knowledge that Debtor's financial distress is a direct consequence of the amounts UMC asserts it is owed by the Debtor related to the Agreements.

11. More than a year after the date of the Security Agreement, with untoward access to the Debtor and unbeknownst to the Debtor, on or about May 28, 2014, UMC filed a UCC-1

4

Financing Statement with the Texas Secretary of State ("UMC Lien"), which purports to effect a lien on all of the Debtor's assets.

12. In connection with the UMC Lien, UMC may assert liens and security interests in some or all of the Debtor's personal property (the "Property"), including, but not limited to, goods, accounts, inventory, furniture, fixtures and equipment, and general intangibles. UMC may also assert that the proceeds received from the Property consisting of accounts receivables is "cash collateral" as defined in § 363(a).

13. On the Petition Date, the Debtor will pursue its Complaint against University Medical Center ("UMC"). As more fully set forth in the Complaint, the Debtor believes that the UMC Lien is avoidable pursuant to §§ 547, 548, and 550 of the Bankruptcy Code because, among other things, the agreements and transactions between UMC and the Debtor have not been arms' length transactions consistent with a finding that UMC is an insider of the Debtor, and systematically siphoned funds from and hobbled the Debtor financially. Moreover, throughout the course of the parties' relationship, UMC has exercised control over the Debtor consistent with a non-statutory insider. In addition, the UMC Lien was made under unusual circumstances, including the fact that it was made over a year after the parties entered into a security agreement, and, as set forth in the Complaint, only after the Debtor's Board decided to cease payments to UMC with respect to the Agreements due to lack of liquidity and insolvency. Accordingly, the Debtor believes that the UMC Lien should be avoided, thus eradicating UMC's lien position entirely.

### V. RELIEF REQUESTED AND SUPPORTING AUTHORITIES

14. The Debtor seeks, among other things, the Court enter interim and final orders pursuant to the Bankruptcy Code §§ 105, 361, 362, and 363 (the "Interim Order" and "Final Order;" collectively, "Cash Collateral Orders") authorizing the Debtor's use of Cash Collateral.

15. The Debtor requires immediate authority from, the Court to use Cash Collateral in the ordinary course of its business and on an interim basis to avoid irreparable harm until there is a final hearing on this Motion. Attached hereto as Exhibit A is the Debtor's proposed interim budget for the use of Cash Collateral ("Interim Budget"). The Interim Budget shows that the Debtor has positive cash flow on a non-debt service basis. The Interim Budget further shows that the Debtor builds cash over the entire budget period. Upon final hearing, the Debtor requests approval of a thirteen (13) week budget in the form to be provided to UMC and any other known cash collateral claimant no later than five (5) days prior to the final hearing.

16. The Debtor requests the authority to use Cash Collateral to operate its business. The Debtor's use of cash collateral is essential to its continued operations, which consists entirely of the provision of pediatric care to the children of the El Paso region. The Debtor's use of cash collateral is essential as well to maintain the value of the Property and for the effective administration of this bankruptcy case. Therefore, the use of cash collateral is in the best interest of the Debtor, its estate, its creditors, and its most important constituents—its pediatric patients.

17. Section 363(c)(2) of the Bankruptcy Code establishes a special requirement with respect to "cash collateral," by providing that the trustee or debtor-in-possession may not use, sell, or lease "cash collateral under subsection (c)(1) unless:

    a. Each entity that has an interest in such cash collateral consents; or

    b. The court, after notice and a hearing, authorizes such use, sales, or lease in accordance with the provisions of this section.

18. The Debtor requires the continued authority to use Cash Collateral for an interim period and beyond, in order to continue its operations in this bankruptcy case until it can confirm a Chapter 11 plan. The Debtor will continue to need to use the Cash Collateral during the pendency of this bankruptcy case.

19. The immediate and temporary approval for the use of the Cash Collateral is consistent with (i) Bankruptcy Code requirements for maintaining the going concern of a debtor's business operations; (ii) the law under 11 U.S.C. §§ 363 and 361 as to the use of cash collateral and adequate protection; and (iii) facilitating a successful reorganization under chapter 11 of the Bankruptcy Code.

20. The Debtor requests that the Court set a final hearing for final approval of the use of Cash Collateral, on notice to creditors and parties in interest.

21. The Bankruptcy Code contemplates a debtor's use of collateral during the reorganization of its business. Sections 102(1) and 363 of the Bankruptcy Code provide that collateral may be used upon notice and opportunity for a hearing appropriate in the particular circumstances. Relief may be authorized without an actual hearing if there is insufficient time available and adequate protection has been provided. 11 U.S.C. § 363(e). *In re Triplett,* 87 B.R. 25 (Bankr.W.D.Tex. 1988); *In re Cafeteria Operators, L.P.,* 299 B.R. 400, 410 (Bankr. N.D.Tex. 2003); *In re McCombs Properties VI, Ltd.,* 88 B.R. 261, 268 (Bankr.C.D.Cal. 1988).

22. Section 361 of the Bankruptcy Code sets forth various types of adequate protection which the Debtor may provide:

   a. making periodic cash payments to the extent that the creditor suffers a decrease in the value of its interest in such property;

   b. granting replacement liens in collateral to compensate the creditor for any decrease in the value of the creditor's interest in such property; or

   c. granting other relief as will result in the realization of the indubitable equivalent of the creditor's interest in collateral.

The Debtor proposes that UMC, to the extent that it has an unavoidable and enforceable lien against the Debtor's Cash Collateral, be granted a replacement lien on post-petition accounts receivable and have a super-priority administrative claim for any unanticipated diminution in

7

such Cash Collateral. Given the controversy surrounding the amount and perfection of UMC's lien, the proposed adequate protections of UMC's position is more than sufficient.

WHEREFORE, PREMISES CONSIDERED, the Debtor respectfully requests that the Court enter an order (i) authorizing the use of Cash collateral; (ii) scheduling a final hearing; (iii) granting the Motion; and (iv) granting such other and further relief to which the Debtor is justly entitled.

Dated: May 19, 2015.

                                            Respectfully submitted,

                                            JACKSON WALKER LLP
                                            100 Congress Avenue, Suite 1100
                                            Austin, Texas 78701
                                            (512) 236-2000 – Main Telephone
                                            (512) 236-2002 – Main Facsimile
                                            www.jw.com

                                            By: */s/ Patricia B. Tomasco*
                                                 Patricia B. Tomasco
                                                 State Bar No. 01797600
                                                 (512) 236-2076 – Direct Dial
                                                 (512) 691-4438 – Direct Fax
                                                 Email: ptomasco@jw.com

                                                 Jennifer F. Wertz
                                                 State Bar No. 24072822
                                                 (512) 236-2247 – Direct Dial
                                                 (512) 391-2147 – Direct Fax
                                                 Email: jwertz@jw.com

                                                 **PROPOSED COUNSEL FOR THE DEBTOR-IN-POSSESSION**

## CERTIFICATE OF SERVICE

  I hereby certify that on the 19th day of May 2015, a true and correct copy was served via the Court's CM/ECF electronic notification system upon the parties listed below, and via United States mail, postage prepaid upon the parties listed on the attached service list.

UNITED STATES TRUSTEE
Nancy Ratchford, Assistant US Trustee
PO Box 1539
San Antonio, Texas 78295

                /s/ *Patricia B. Tomasco*
                Patricia B. Tomasco